CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

DEC 17 2008

JOHN F. CORCORAN, CLERK
BY: /s/ J. Bright
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

BRENDON LAMONT GANNON, SR., )
    Plaintiff, )    Civil Action No. 7:08-cv-00570
)
v. )    **MEMORANDUM OPINION**
)
LT. COL. MCDANIELS, et. al., )    By:  Hon. Glen E. Conrad
    Defendants. )          United States District Judge

Plaintiff Brendon Lamont Gannon, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Gannon alleges that officials at the Central Virginia Regional Jail ("the jail") have allowed jail conditions and prosecuted disciplinary proceedings that violated his constitutional rights. Gannon seeks injunctive relief. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

I.

Liberally construing Gannon's submissions, the court concludes that plaintiff's complaint sets forth the following sequence of events from which his claims arise. On July 29, 2008, Captain Dyer came into Gannon's housing area at the jail and told the inmates "to clean the block." While the inmates were still in the process of cleaning, Dyer and other officers returned and told all inmates to go to their bunks. He ordered officers to place Gannon in handcuffs because his bunk was not made.[1] Several other inmates were also cuffed in this incident. Officers were "aggressive and really

---

[1] Gannon states that he was away from the jail for some time in July 2008 and had just returned on July 25, four days before the bunk incident. He alleges that his bed was made, except he did not have the wool blanket on it because the wool makes him itch and he had not yet had an opportunity to request a cotton blanket.

trying to provoke" Gannon; they did not allow him to pack his property, and some of it, including some paperwork to support his claims, was lost.[2] Gannon calls the incident an "act of 'Institutional Racisim.'"

Later, Officer Mahieu filed a written disciplinary charge against Gannon for not obeying a direct order to make his bunk on July 29, 2008. Gannon asserts that the charge was false, because while Mahieu worked in his housing area between 6:00 a.m. and 6:00 p.m. on July 29, 2008, he never gave Gannon a direct order to make his bunk that day.[3]

On July 30, Gannon met with Lt. Col. McDaniel, who asked Gannon why he kept "writing things that['s] not true about his officers." Gannon said the institution was poorly run, and most officers were racist. McDaniel, using profanity, told Gannon that he did not know what he was talking about and told him to write to his family and to stop writing him. Gannon responded by calling McDaniel "a redneck racist son of a bitch." McDaniel had Gannon removed from his office. Gannon had a hearing on the bunk charge on August 2, 2008, and was convicted. His appeal was denied because based on a defective tape, the reviewer agreed with the hearing officer that Gannon had disobeyed a direct order. Gannon served a five-day sentence in the SHU for the bunk conviction, and since then, officers have not released him to the general population on Dyer's order.

In Claim 1, Gannon alleges that McDaniels violated his rights by charging exorbitant prices for non-nutritious food items from the jail commissary, by using the special housing unit ("SHU")

---

[2] Gannon vaguely asserts that this paperwork was destroyed by Dyer, but alleges no facts in support of his assertion.

[3] Mahieu allegedly admitted this fact to Gannon and claims to have done it because he was following orders. Gannon asserts that his questions about the items offered in the commissary made Dyer "upset."

2

to punish inmates, and by not giving SHU inmates outside recreation for four months. Gannon also complains in Claim 1 that McDaniel has abused power and is a racist. In Claim 2, he sues Captain Dyer as racist, reciting another inmate's second-hand information that Dyer once said "niggas [sic] are animals." Claim 3 is against Officer Mahieu for writing a false charge.

## II.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted." Factual allegations must be enough to raise a right to relief above the speculative level and have "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, ___, 127 S. Ct. 1955, 1974 (2007). A litigant may be deemed to act maliciously if his motive is to vex and harass the defendants. Johnson v. Edlow, 37 F. Supp.2d 775, 776 (E.D.Va. 1999) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)). In determining whether an action is malicious, the court must review not only the instant complaint, but also the plaintiff's prior litigious conduct. Id. (citing Cochran v. Morris, 73 F.3d 1310, 1316-17 (4th Cir. 1996)).

When a defendant is lawfully convicted and confined to jail, he loses a significant interest in his liberty for the period of the sentence, and his confinement is necessarily subject to the broad discretion of those parties managing the jail. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).

3

Nevertheless, confinement does not strip an inmate of all liberty interests. Id. Inmates' liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In Sandin, the Court found that disciplinary segregation did not constitute atypical and significant hardship where: (1) the disciplinary segregation mirrored conditions of other forms of completely discretionary confinement; (2) based on a comparison between inmates inside and outside of disciplinary segregation, the state's action in placing the defendant in segregation did not significantly disrupt the defendant's environment; and (3) the state action did not affect the duration of the defendant's sentence. Id.

It is not clear from Gannon's submissions whether he was a pretrial detainee or a convicted felon at the time these claims arose. He merely states that he is a federal inmate and mentions that he was transported to court in Baltimore in July 2008 and then returned to the jail shortly before he received the disciplinary charge for not making his bunk. If he is not yet convicted, his claims regarding prison conditions must be addressed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535-38 (1979). Officials may not take actions against pretrial detainees with the purpose or intent of punishing them. United States v. Cobb, 905 F.2d 784 (4th Cir. 1990). Punitive intent may be inferred when the state action was not reasonably related to a legitimate non-punitive objective. Id. Conditions of confinement cannot be considered punishment so long as they are rationally connected to a legitimate, non-punitive penological purpose and are not excessive in relation to that purpose. Bell,

4

441 U.S. at 535-38; Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) ("[T]he Constitution is not concerned with a de minimis level of imposition on pretrial detainees.") (internal quotation marks and citation omitted).

Gannon seems primarily concerned that he has been "punished" by being "falsely charged" and housed in the SHU for several months, even after he completed his disciplinary sentence. However, he simply does not allege any facts indicating that his segregated confinement has violated his Due Process rights. The only differences between conditions in the general population and the SHU that Gannon mentions are limits on outdoor recreation and property possession. The court cannot find that these alleged conditions are dramatically different or an atypical departure from the normal constraints of prison life so as to state a claim under Sandin. Similarly, Gannon does not allege facts indicating that segregation conditions present more than de minimis inconvenience so as to offend a detainee's Due Process rights. Accordingly, the court cannot find that either his brief disciplinary sentence of five days in the SHU or his retention in that unit for unidentified administrative reasons constitutes a deprivation of Due Process rights.[4] As for the allegedly "false" disciplinary charge, because the result of the charge (the imposed disciplinary penalty) did not violate Due Process, the court finds no respect in which the charge itself presents a constitutional violation.[5]

---

[4] Gannon also does not assert or allege facts supporting a claim that limits on outdoor recreation constitute a violation of his Eighth Amendment rights. See Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993) (requiring showing of injury to state Eighth Amendment claim regarding hazardous prison living conditions).

[5] It is also apparent from the record that Gannon could not prove that the charge was false. Gannon admits that his bunk was not made with the required bedding, and there is no indication that a charge for disobeying a direct order cannot be based on an inmate's failure to comply with a standing requirement of inmate conduct.

5

Gannon asserts that officers are housing him in segregation because he complained about the commissary food and other living conditions at the jail. Perhaps he is trying to raise a § 1983 claim of retaliation. His allegations fail to support the elements of such a claim, however. To state a prima facie claim of retaliation under § 1983, an inmate must allege facts showing that his exercise of his constitutional right was a substantial factor motivating the retaliatory action. See, e.g., American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977)); Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993). "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. Wagner, 13 F.3d at 91. The inmate must also allege that, as a result of the retaliatory action, he suffered some adverse impact on the continued exercise of his constitutional rights. Wicomico County, 999 F.2d at 786 (finding that mere inconvenience in exercise of constitutional rights is not adverse enough to constitute actionable retaliation). Plaintiff must allege specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

Gannon asserts that officers assigned him to long term housing in the SHU and caused him to be falsely charged with a disciplinary offense, because he filed grievances and a previous § 1983 action about the commissary prices and other living conditions. In filing grievances, however, he was not exercising a constitutional right. Id. While his prior § 1983 action did represent exercise of a constitutional right, he fails to allege any facts indicating that the lawsuit was a motivating factor behind either the disciplinary charge or the subsequent, administrative assignment to the SHU.

6

Because Gannon's assertion that these adverse actions were retaliatory is nothing more than speculation, his allegations are insufficient to state any actionable § 1983 claim here. For the stated reasons, the court will dismiss Gannon's retaliation claims, pursuant to § 1915A(b)(1).

Gannon's claim against McDaniel, regarding the type of food items and the prices in the jail commissary, must be dismissed as malicious. Gannon filed a previous § 1983 action raising this commissary claim, Case No. 7:08CV394. The court dismissed that case without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), because Gannon's allegations failed to state any constitutional claim actionable under § 1983. Nevertheless, Gannon presents the claim again here, in cursory fashion, with no additional factual allegations demonstrating how he has been injured or is likely to be. Accordingly, the court is satisfied that he is pursuing the claim maliciously, in order to harass the defendants. In any event, plaintiff fails to demonstrate that inmates have any constitutional right to a commissary at all, let alone one with low prices or particular food items. See, e.g., Cato v. Watson, 212 Fed. App'x 258, 259-60 (5th Cir. 2006) (finding that inmates have no liberty interest in commisary privileges); Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e note that we know of no constitutional right of access to a prison gift or snack shop."); French v. Butterworth, 614 F.2d 23, 24 (1st Cir. 1980) (finding that inmates do not have a constitutionally protected right to purchase commissary items at low prices). The court will dismiss Gannon's commissary claim without prejudice, pursuant to § 1915A(b)(1).

Gannon also makes vague claims of abuse of power and racism. Conclusory allegations of discriminatory intent are insufficient to state a claim. Chapman v. Reynolds, 378 F. Supp 1137, 1140 (W.D. Va. 1974). "A claim of racial discrimination is a grievous charge, which certainly can

7

rise to constitutional dimensions; but absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated." Id. Verbal abuse and harassment by prison officials, even including the use of obscenities or racial slurs, are not sufficient to state any constitutional claim. See Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985)(calling an inmate an obscene name did not violate constitutional rights); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (threats); Keyes v. City of Albany, 594 F. Supp. 1147 (N. D. N.Y. 1984)("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim.").

Gannon's allegations of racism are conclusory at best. He alleges no specific facts concerning any comment any of the defendants made concerning his race or any specific connection between his race and the adverse actions of which he complains. McDaniel's alleged use of profanity when speaking with Gannon may be unprofessional, but there is no indication that it indicated racist tendencies or that any action McDaniel took was because of Gannon's race. Verbal threats or harassing comments by McDaniel or the other defendants, without more, do not state any constitutional violation. The court will dismiss Gannon's claims of racism and verbal harassment accordingly, pursuant to § 1915A(b)(1).

III.

In conclusion, the court finds that Gannon's very detailed allegations fail to state any constitutional claim actionable under § 1983. Accordingly, the court will dismiss his entire complaint without prejudice under § 1915A(b)(1). An appropriate order shall be issued this day.

8

Case 7:08-cv-00570-GEC-mfu   Document 6   Filed 12/17/08   Page 8 of 9   Pageid#: 58

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5). The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 17th day of December, 2008.

/s/ Jsuh Conrad
United States District Judge